IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 2 2 2008

GREGORY C. LANGHAM
CLERK

Civil Action No. 83-C-2386

STATE OF COLORADO

     Plaintiff,

vs.

UNITED STATES OF AMERICA,
SHELL OIL COMPANY, et al.,

     Defendants.

---

## CONSENT DECREE BETWEEN SHELL OIL COMPANY
## AND THE STATE OF COLORADO

---

Plaintiff State of Colorado (the "State") and Defendant Shell Oil Company ("Shell") (collectively, the "Parties") have agreed to the entry of this Consent Decree based upon the pleadings herein without any admission of liability or fault as to any allegation or matter arising out of the pleadings or otherwise.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, resolves claims asserted by the State against Shell, and will avoid prolonged and complicated litigation. The Court further finds that this Consent Decree is fair, reasonable, consistent with the purposes of CERCLA and in the public interest.

## BACKGROUND

A.      On December 9, 1983, the State filed a complaint in this action pursuant to

Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of

1980 ("CERCLA"), 42 U.S.C. §§ 9607-9675, for Damages to the State's Natural Resources due

to releases or threatened releases of hazardous substances from the Rocky Mountain Arsenal (the

"Arsenal").

B.      On November 25, 1985, the State amended its complaint to add claims for

recovery of Response costs, including investigative activities, site cleanup, removal and remedial

actions, and for all other costs of Response incurred and to be incurred by the State not

inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, pursuant to Section 107 of

CERCLA, 42 U.S.C. § 9607. On July 10, 1990, the State filed an Amended Complaint alleging

three claims against Shell. The first and second claims for relief are for Natural Resource

Damages under CERCLA. The third claim for relief is for recovery of Response costs under

CERCLA.

C.      The Arsenal is a federally owned facility in Adams County, Colorado,

immediately northeast of the Denver metropolitan area and southwest of Denver International

Airport. In 1942, the U.S. Army purchased the 27-square mile property for the manufacture of

chemical warfare agents and incendiary munitions.

D.      After World War II, the Army leased portions of the Arsenal to Shell Chemical

Company, a predecessor in interest to Shell for the manufacture of agricultural pesticides and

other chemical products. The manufacturing operations continued into the 1980s.

E.     The Army continued to manufacture chemical warfare agents, particularly Sarin nerve agent, and to use areas of the Arsenal to fill and store munitions, demilitarize chemical weapons, and mix hydrazine rocket fuels for the U.S. Air Force into the 1980s.

F.     As a result of the operations of the Army and Shell, hazardous substances were released into the environment and have caused injuries to Natural Resources.

G.     The Environmental Protection Agency ("EPA") listed most of the Arsenal on the National Priorities List ("NPL") established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605 on July 11, 1987 (52 Fed. Reg. 27619), thus making it a priority for cleanup. On March 13, 1989, EPA separately listed the disposal basin, Basin F, on the NPL (54 Fed. Reg. 10512).

H.     In February 1989, Shell, the Army, EPA, the U.S. Department of the Interior, and the U.S. Agency for Toxic Substances and Disease Registry entered into a Federal Facility Agreement which, among other objectives, established a procedure by which the parties would cooperate in the assessment, selection and implementation of Response actions to address releases or threatened releases of hazardous substances. The State was not a party to the Federal Facility Agreement.

I.     In 1995, the State, the Army, Shell, the EPA, and the U.S. Fish and Wildlife Service reached agreement regarding Arsenal cleanup, which is anticipated to cost more than $2.1 billion. The Record of Decision for the Off-Post Operable Unit was signed in 1995; the Record of Decision for the On-Post Operable Unit was signed in 1996. The completion of

cleanup measures, other than monitoring and maintenance, is expected in 2010. Large portions

of the Arsenal have been converted into the Rocky Mountain Arsenal National Wildlife Refuge

pursuant to the Rocky Mountain Arsenal National Wildlife Refuge Act of 1992 (Public Law 102-

402, 102d Congress; HR 1435). Other portions of the Arsenal will be added to the Refuge as

remaining cleanup actions are completed. Areas where waste is contained in place or where

remedial facilities remain onsite will not become part of the Refuge but will continue to be

managed by the Army.

J.      In the fall of 2007, the State released its proposed assessment plan for determining

Natural Resource Damages for injuries remaining after completion of the remedial actions, and

for interim losses from the passage of CERCLA in December of 1980 to the estimated date of

completion of restoration, replacement or acquisition of resources equivalent to the loss. The

assessment plan focused on injuries to wildlife and groundwater, but also identified interim air

injuries that allegedly occurred in the late 1980s.

K.      In commenting upon the State's proposed assessment plan for determining Natural

Resource Damages, Shell stated its position that response and restoration actions performed by

Shell and the Army had substantially restored the injured natural resources, and thereby had

substantially reduced the Natural Resource Damages attributable to such injured resources.

Despite extended good faith efforts, the Parties have not been able to reach agreement on this

issue. In order to avoid prolonged and complicated litigation, however, they have entered into

this Consent Decree to resolve the matter.

## JURISDICTION

1.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 9613(b). The Court also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Decree and the underlying amended complaint, the Parties waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. The Parties shall not challenge this Court's jurisdiction to enter or enforce this Consent Decree.

## PARTIES BOUND

2.  This Consent Decree binds Shell, as a defendant in the Litigation, and the State, as the plaintiff in the Litigation, in which the State is acting on behalf of the Executive Director of the Colorado Department of Public Health and Environment, the Director of the Division of Reclamation, Mining and Safety of the Colorado Department of Natural Resources and the Attorney General of the Colorado Department of Law, who are the designated trustees of Natural Resources for the State under Section 107(f) of CERCLA, 42 U.S.C. § 9607(f).

## DEFINITIONS

3.  When the terms listed in subparagraphs (a) through (n) below are used in this Consent Decree, the following definitions apply. When other terms used in this Consent Decree are defined in CERCLA, or in regulations promulgated under CERCLA, they shall have the meaning assigned to them therein.

    (a)     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

(b)     "Colorado" or the "State" shall mean the State of Colorado and its agencies, subdivisions, departments, instrumentalities and trustees for Natural Resources.

(c)     "Consent Decree" shall mean this Consent Decree.

(d)     "Damages" shall mean damages for injuries to or loss of Natural Resources.

(e)     "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

(f)     "Litigation" shall mean the lawsuit initiated by the State in the United States District Court for the District of Colorado by the filing of a complaint on December 9, 1983, designated as Civil Action Number 83-C-2386, as amended.

(g)     "Natural Resources" shall mean land, fish, wildlife, biota, air, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State of Colorado.

(h)     "Northeast Greenway Corridor" is an inter-jurisdictional partnership comprised of Adams County, the City of Aurora, the City of Brighton, Commerce City, the City and County of Denver, Thornton, the Office of the Colorado Attorney General, and the Sand Creek Regional Greenway. Through a Cooperative Agreement, this partnership has developed a plan for creation of a network of urban greenways, trails and open spaces near the Arsenal extending from Denver to Brighton and from Commerce City to Aurora known as the "Greenway Project."

(i)      "Parties" shall mean the State and Shell.

(j)      "Property" shall mean the approximately 100 acres of land Shell is donating pursuant to paragraph 5 of this Consent Decree.

(k)      "Response" shall mean remove, removal, remedy, and remedial action, as those terms are defined in Section 101(23)-(25) of CERCLA, 42 U.S.C. § 9601 (23)-(25), including enforcement activities related to each such action.

(l)      "Shell" shall mean the Shell Oil Company.

(m)      "Trustees" shall mean the Executive Director of the Colorado Department of Public Health and Environment; the Director of the Division of Reclamation, Mining and Safety of the Colorado Department of Natural Resources; and the Attorney General of the State of Colorado.

(n)      "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## NATURAL RESOURCE DAMAGES SETTLEMENT AMOUNT

4.      Shell Chemical LP, on behalf of Shell Oil Company, will pay $10 million to the State Trustees, on behalf of the State, for use only to restore, replace or acquire the equivalent of the Natural Resources injured by releases of hazardous substances at or from the Arsenal. The $10 million shall be paid to the Natural Resource Damage Recovery Fund (the "NRD Recovery Fund"), established pursuant to Colo. Rev. Stat. § 25-16-104.7, within 45 Days of the entry of this Consent Decree and final judgment of the Court. Payment shall be by electronic fund

transfer to the following account and shall reference the Colorado Department of Health and Environment:

> JP Morgan Chase
> 1125 Seventeenth Street
> Denver, CO 80202
> State of Colorado Operating Acct # 1193489208
> ABA Bank No. 102001017

5.    Shell will also make the following donations in support of the Greenway Project to be used solely for public purposes:

(a)    Shell will donate to Commerce City the Property, which consists of approximately 100 acres of a larger tract of property that Shell owns north of the Arsenal, to support the First Creek Corridor Greenway. The exact boundaries of the Property will be determined in consultation with Commerce City and through a survey.

(b)    The Property shall also be subject to (i) an easement to allow for the presence, maintenance and fencing of the water withdrawal and reinjection wells and associated remedy-related facilities existing on the Property; (ii) the existing License Agreement between the Army and Shell regarding water treatment wells and associated facilities; (iii) a conservation easement in a form acceptable to the State and Commerce City to preclude development of the land (other than for remedy-related purposes); (iv) existing deed restrictions on the use of groundwater; (v) any other requirement for the protection of human health or the environment; and (vi) all other encumbrances of record.

(c)    Shell and the State shall work in good faith and use all best efforts to complete the transfer of the Property within six months after entry of the Consent Decree as an order and final judgment of the Court.

6.    Shell will donate an additional $10 million to the Colorado Natural Resources Foundation Fund (the "Foundation Fund"), established pursuant to Colo. Rev. Stat. § 24-33-108, to be used solely for the Greenway Project and subject to the following terms:

(a)    An initial donation of $3 million to be paid in $1 million annual installments for a period of three years, with the first installment being paid within 45 Days after the Court enters the Consent Decree as an order and final judgment. The remaining two installments shall be paid no later than on the anniversaries of the first payment.

(b)    Payment shall be by electronic fund transfer to the following account and shall reference the Colorado Department of Natural Resources:

JP Morgan Chase
1125 Seventeenth Street
Denver, CO 80202
Payee Account:  State of Colorado Operating Acct # 1193489208
ABA Bank No.:  102001017

(c)    Beginning no sooner than 45 Days after Court approval of the Consent Decree, additional donation(s) of up to $7 million payable to the Foundation Fund as the Trustees approve the award of contracts or grants from the Foundation Fund for the Greenway Project. Such awards shall be forwarded to Shell for payment to the Foundation Fund after approval by the Trustees. Shell shall pay the amount requested to the Fund within 60 Days after the receipt

of the award, unless such award does not meet the criteria described in this Consent Decree or as otherwise mutually agreed in any subsequent donation agreement.

(d) The Trustees will not reimburse project planning or design costs.

(e) The State shall establish and draft governing documents for a Northeast Greenway Corridor Advisory Committee (the "Advisory Committee") to be comprised of the representatives of local governments or communities selected by the Trustees. The Advisory Committee may review and recommend awards for the Greenway Project. Shell shall have the option of appointing a person of Shell's choosing to the Advisory Committee.

(f) The Trustees shall strive to award funding for Greenway Project proposals based in material part on the proposal's ability to restore, replace or provide the equivalent of, including services provided by, Natural Resources injured by releases of hazardous substances.

(g) Within 15 Days after receipt of a payment by Shell, the Trustees shall provide a receipt acknowledging the donation and certifying that the donation has been made to the State for exclusively public purposes. The receipt shall certify the donation meets the requirements of Section 170(c)(1) of the Internal Revenue Code, 26 U.S.C. § 170(c)(1).

7. The monetary amounts payable by Shell shall not be adjusted for interest, inflation or the passage of time.

## RESPONSE COSTS

8. By a Settlement Agreement the Parties entered in July 1997, the Parties and the United States settled the State's claim for Response costs incurred by the State through June 30, 1996.

Paragraph 2 of the July 1997 Settlement Agreement set forth a process the Parties and the United

States agreed to follow for ongoing Response costs incurred by the State. Since the July 1997

Settlement Agreement, the Parties and the United States have settled all other Response costs the

State has incurred through June 30, 2006, pursuant to a series of annual agreements variously

titled Settlement Agreements, Response Cost Agreements or Response Cost Payment

Acknowledgements. The claim by the State for Response costs from July 1, 2006 through

June 30, 2007 is currently pending.

9.      For annual periods beginning July 1, 2006, and continuing into the future, the Parties

shall continue to follow the same practice they have been following under the July 1997

Settlement Agreement for presentation, consideration and payment of Response costs incurred

by the State.

## ATTORNEY FEES

10.     The Parties shall bear their own attorney fees, expert and consultant fees and all other

costs related to the Litigation or to the implementation of this Consent Decree.

## RELEASE AND COVENANT NOT TO SUE

11.     Subject only to the reservations contained in paragraphs 13 and 14, the State releases and

covenants not to sue or take administrative action against Shell, or any of Shell's officers,

directors, shareholders, subsidiaries, affiliates, attorneys, heirs, successors (including any

transferee of any of the Shell property north of the Arsenal), assigns, contractors and agents from

or for any claim or liability under CERCLA or any other statutory or common law (including

without limitation claims based on the public trust doctrine) for: (i) any injury to, or the cost of

assessing any injury to, any Natural Resource resulting in whole or in part from any release or threatened release of any hazardous substance, pollutant or contaminant at or from the Arsenal, irrespective of when such injury or release allegedly occurred or whether such injury or release is presently known or unknown; and (ii) costs of Response actions, provided that this release and covenant not to sue shall not take effect for the State's annual claims for costs of Response actions incurred after June 30, 2006, until such time as the Parties have resolved each such annual claim as provided in paragraphs 8 and 9 above.

12. Shell releases and covenants not to sue the State for contribution for Natural Resource Damages or for the costs of Response actions that have been taken or may be taken in the future to address past or existing releases at or from the Arsenal.

13. The releases and covenants not to sue do not include any claim for either Party's failure to comply with the terms of the Consent Decree. Before making any claim for any failure to comply with the Consent Decree, the claiming Party shall first provide written notice to the other Party specifying the failure and the factual basis, and allow the other Party 20 Days to cure any such failure. Neither Party shall make any claim for failure to comply with the Consent Decree if the other Party cures the alleged failure in such time.

14. The release and covenant not to sue excludes any claim against Shell for injury to Natural Resources or costs of Response actions that occur as a result of any future release for which Shell is liable, provided that such future release or injury is unrelated to (a) any existing or prior releases; (b) any Response action related to such prior or existing releases; and (c) any injury to Natural Resources or cost of Response that is not caused by a release but results from any

Response action that may be required in the future to repair, restore, supplement or replace an existing Response action or structure. For purposes of this paragraph, and by way of illustration only, a future release or injury to Natural Resources for which Shell may remain liable shall not include (i) the migration of existing contamination; (ii) the continued or future exposure of any Natural Resource to existing or prior contamination or any condition resulting therefrom; (iii) any release or injury resulting from any hazardous substance, pollutant or contaminant that remains at the Arsenal site, including those contained in any engineered structure or treated by any engineered system that forms part of any Arsenal Response action; and (iv) the detection of new or previously unknown levels of contamination from past Arsenal operations.

## EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

15.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree. Except as to persons released in this Consent Decree, each of the Parties expressly reserves any and all rights, defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

16.     The Parties agree and the Court orders that Shell is entitled, as of the date this Consent Decree is entered as an order and final judgment of the Court, to protection from contribution actions or claims for the matters addressed in this Consent Decree, as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2). The matters addressed in this Consent Decree include (i) Damages for injury to, destruction of, or loss of Natural Resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release of

any hazardous substance, pollutant or contaminant at or from the Arsenal and (ii) the State's costs of Response actions, provided that the protection from contribution claims for such Response action costs shall not take effect for periods following June 30, 2006, until such time as Shell and the State have settled each such claim on an annual basis.

## NOTICES AND SUBMISSIONS

17.　　Written notices related to this Consent Decree shall be considered made when personally delivered, faxed, or sent by delivery service to the following, as may amended by either Party from time to time by notice to the other Party:

For Shell:

> Laura Turley
> Managing Counsel
> Shell Oil Company
> P.O. Box 2463, OSP 4868
> Houston, TX 77252-2463

with copies to:

> Roger B. Shakely, P.E.
> Denver Site Project Manager
> Shell Oil Company
> PO Box 538
> Commerce City CO 80037

> and

> Daniel J. Dunn, Esq.
> Holme Roberts & Owen LLP
> 1700 Lincoln, Suite 4100
> Denver, CO 80203

For the State:

> David Kreutzer
> First Assistant Attorney General
> Natural Resources and Environment Section
> Colorado Department of Law
> 1525 Sherman Street, 7th Floor
> Denver, CO 80203

with copies to:

> Casey A. Shpall
> Deputy Attorney General
> Natural Resources and Environment Section
> Colorado Department of Law
> 1525 Sherman Street, 7th Floor
> Denver, CO  80203

## DISPUTE RESOLUTION

18.    In the event of any dispute regarding the Consent Decree arising after its final approval

by the Court, the Parties shall attempt to resolve such dispute through negotiation, mediation,

arbitration or any other form of alternative dispute resolution as may be agreed to by the Parties

at the time the dispute arises.  If the Parties do not agree to a form of dispute resolution, Shell

Chemical LP's Global Divestments Manager and the Attorney General or their successors shall

meet in person or confer to attempt to resolve the dispute.

19.    In the event that the Parties fail to resolve a dispute pursuant to the preceding paragraph

within a reasonable time, either Party may seek to enforce such rights and remedies as may be

available to such Party, including but not limited to petitioning the Court to interpret or enforce

any term of this Consent Decree.

20.    Except to the extent provided in paragraph 18, nothing in this Consent Decree shall be

construed to limit the right of a Party to initiate an action against the other Party for breach of

this Consent Decree or to otherwise limit any right which any Party has or may have against any other person or entity.

## RETENTION OF JURISDICTION

21.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate to construe, modify, implement, terminate, reinstate or enforce compliance with the terms of this Consent Decree or for any further relief as the interest of justice may require.

## INTEGRATION

22.    This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the State and Shell with respect to the Natural Resource Damage settlement embodied herein. The Parties acknowledge that there are no representations, agreements or understandings between the State and Shell relating to the settlement between them other than those expressly contained in this Consent Decree.

## LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

23.    Within 10 Days of execution of this Consent Decree, the State and Shell shall jointly lodge the Consent Decree with the Court having jurisdiction over the Litigation for a public notice and comment period of 30 Days. Within a reasonable time not to exceed 30 Days after the close of the public comment period, if the Parties conclude to proceed with this settlement according to the terms of this Consent Decree, they shall file a joint motion requesting the Court

16

to enter the Consent Decree as an order and final judgment and to dismiss with prejudice all of the State's claims against Shell, except as provided in paragraphs 8 and 9, each Party to pay its own costs and attorney fees.

## INADMISSIBILITY AND PRIVILEGE

24.    Other than in a proceeding to enforce the terms of this Consent Decree, nothing in this Consent Decree shall be admissible as evidence to prove liability for or invalidity of any claim or defense in the Litigation or the amount of any such claim. None of the Parties is making any admission of fact or law by entering into this Consent Decree.

25.    Nothing in this Consent Decree, nor any actions taken in accordance with this Consent Decree, shall be construed as a waiver of the attorney-client privilege, work-product immunity or any other privilege or immunity that has been or may be asserted in this or any other matter.

## MODIFICATION

26.    Except for jurisdictional provisions of paragraph 1, the settlement amounts and other consideration set forth in paragraphs 4 through 6, the release and covenant not to sue provisions of paragraphs 11 through 14, the contribution protection provided by paragraph 16, and the retention of jurisdiction provided by paragraph 21, the Parties can modify the terms of the Consent Decree by mutual agreement without Court order or approval, in order to achieve the purposes of the Consent Decree.

## AUTHORITY TO SIGN

27.     Each undersigned representative of a signatory to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such signatory to this document.

## SIGNATURES AND COUNTERPARTS

28.     This Agreement may be executed in counterparts.  Signatures may be transmitted separately by facsimile or e-mail, attached to a counterpart, and presented in such form to the Court as if they were original signatures on a single document.

FOR THE STATE:


_John W. Suthers_        _June 25, 2008_
John W. Suthers, Attorney General,        Date
State of Colorado


_____        _____
James B. Martin, Executive Director, Colorado        Date
Department of Public Health and Environment


_____        _____
Ronald W. Cattany, Director, Division of
Reclamation, Mining and Safety        Date

FOR THE STATE:

_____          Date
John W. Suthers, Attorney General,
State of Colorado

_____          **6/26/08**
James B. Martin, Executive Director, Colorado                Date
Department of Public Health and Environment

_____
Ronald W. Cattany, Director, Division of
Reclamation, Mining and Safety                              Date

FOR THE STATE:

_____     _____
John W. Suthers, Attorney General,                          Date
State of Colorado


_____     _____
James B. Martin, Executive Director, Colorado               Date
Department of Public Health and Environment

_____     _____
Ronald W. Cattany, Director, Division of          June 26, 2008
Reclamation, Mining and Safety                              Date

FOR SHELL

Shell Oil Company
by Shell Chemical LP as agent under Authorization Agreement
by Raymond Collins, Global Divestments Manager

6 -24-08
Date

SO ORDERED THIS 22nd DAY OF September, 2008.

BY THE COURT:

_United States District Court Judge_