FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

FEB 2 7 2009

GREGORY C. LANGHAM
CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 83-C-2386

STATE OF COLORADO

      Plaintiff,

vs.

UNITED STATES OF AMERICA,
SHELL OIL COMPANY, et al.,

      Defendants.

---

## CONSENT DECREE BETWEEN THE UNITED STATES OF AMERICA AND THE STATE OF COLORADO

---

Plaintiff State of Colorado (the "State") and Defendant United States of America ("United States") (collectively, the "Parties") have agreed to the entry of this Consent Decree based upon the pleadings herein without any admission of liability or fault as to any allegation or matter arising out of the pleadings or otherwise.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, resolves claims asserted by the State against the United States, and will avoid prolonged and complicated litigation. The Court further finds that this Consent Decree is fair, reasonable, consistent with the purposes of CERCLA and in the public interest.

## BACKGROUND

A.     On December 9, 1983, the State filed a complaint in this action pursuant to

Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of

1980 ("CERCLA"), 42 U.S.C. §§ 9607-9675, for alleged Damages to the State's Natural

Resources due to releases or threatened releases of hazardous substances from the Rocky

Mountain Arsenal (the "Arsenal").

B.     On November 25, 1985, the State amended its complaint to add claims for

recovery of Response costs, including investigative activities, site cleanup, removal and remedial

actions, and for all other costs of Response incurred and to be incurred by the State not

inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, pursuant to Section 107 of

CERCLA, 42 U.S.C. § 9607.  On July 10, 1990, the State filed an Amended Complaint alleging

three claims against the United States and Shell Oil Company ("Shell").  The first and second

claims for relief are for Natural Resource Damages under CERCLA.  The third claim for relief is

for recovery of Response costs under CERCLA.  The July 10, 1990 Amended Complaint also set

forth two claims for relief exclusively against the United States Army:  a fourth claim for relief

alleging various violations of CERCLA and the CERCLA National Contingency Plan, and a fifth

claim for relief alleging various violations of the federal Resource Conservation and Recovery

Act and the Colorado Hazardous Waste Management Act.

C.     The Arsenal is a federally owned facility in Adams County, Colorado,

immediately northeast of the Denver metropolitan area and southwest of Denver International

Airport.  In 1942, the U.S. Army purchased the 27-square mile property for the manufacture of

chemical warfare agents and incendiary munitions.

D.      After World War II, the Army leased portions of the Arsenal to Shell Chemical

Company, a predecessor in interest to Shell for the manufacture of agricultural pesticides and

other chemicals products. The manufacturing operations continued into the 1980s.

E.      The Army continued to manufacture chemical warfare agents, particularly Sarin

nerve agent, and to use areas of the Arsenal to fill and store munitions, demilitarize chemical

weapons, and mix hydrazine rocket fuels for the U.S. Air Force into the 1980s.

F.      As a result of the operations of the Army and Shell, hazardous substances were

released into the environment and have caused injuries to Natural Resources.

G.      The Environmental Protection Agency ("EPA") listed most of the Arsenal on the

National Priorities List ("NPL") established pursuant to Section 105 of CERCLA, 42 U.S.C. §

9605 on July 11, 1987 (52 Fed. Reg. 27619), thus making it a priority for cleanup. On March 13,

1989, EPA separately listed the disposal basin, Basin F, on the NPL (54 Fed. Reg. 10512).

H.      In February 1989, Shell, the Army, EPA, the U.S. Department of the Interior, and

the U.S. Agency for Toxic Substances and Disease Registry, entered into a Federal Facility

Agreement, which, among other objectives, established a procedure by which the parties would

cooperate in the assessment, selection and implementation of Response actions to address

releases or threatened releases of hazardous substances. The State was not a party to the Federal

Facility Agreement.

I.      In 1995, the State, the Army, Shell, the EPA, and the U.S. Fish and Wildlife

Service reached agreement regarding Arsenal cleanup, which is anticipated to cost more than

$2.1 billion. The Record of Decision for the Off-post Operable Unit was signed in 1995; the

Record of Decision for the On-post Operable Unit was signed in 1996. The completion of

cleanup measures, other than monitoring and maintenance, is expected in 2010. Large portions of the Arsenal have been converted into the Rocky Mountain Arsenal National Wildlife Refuge pursuant to the Rocky Mountain Arsenal National Wildlife Refuge Act of 1992 (Public Law 102-402, 102d Congress; HR 1435). Other portions of the Arsenal will be added to the Refuge as remaining cleanup actions are completed. Areas where waste is contained in place or where remedial facilities remain onsite will not become part of the Refuge but will continue to be managed by the Army.

J.      In the fall of 2007, the State released its proposed assessment plan for determining Natural Resource Damages for injuries remaining after completion of the remedial actions, and for interim losses from the passage of CERCLA in December of 1980 to the estimated date of completion of restoration, replacement or acquisition of resources equivalent to the loss. The assessment plan focused on wildlife and groundwater, but also identified interim air injuries that allegedly occurred in the late 1980s.

K.      In commenting upon the State's proposed assessment plan for determining Natural Resource Damages, the United States stated its position that response and restoration actions performed by Shell and the Army had substantially restored the injured natural resources, and thereby had substantially reduced or completely offset all the Natural Resource Damages including interim losses. Despite extended good faith efforts, the Parties have not been able to reach agreement on this issue. In order to avoid prolonged and complicated litigation, however, they have entered into this Consent Decree to resolve the matter.

–4–

## JURISDICTION

1.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 9613(b). The Court also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Decree and the underlying amended complaint, the Parties waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. The Parties shall not challenge this Court's jurisdiction to enter or enforce this Consent Decree.

## PARTIES BOUND

2.     This Consent Decree binds the United States (on behalf of the Department of the Army), as a defendant in the Litigation, and the State (on behalf of the Executive Director of the Colorado Department of Public Health and Environment; the Director of the Division of Reclamation, Mining and Safety of the Colorado Department of Natural Resources; and the Attorney General of the Colorado Department of Law, who are the designated trustees of Natural Resources for the State under Section 107(f) of CERCLA, 42 U.S.C. § 9607(f)), as the plaintiff in the Litigation.

## DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA, or in regulations promulgated under CERCLA, shall have the meaning assigned to them therein. When terms listed below are used in this Consent Decree, the following definitions apply:

(a)     "Arsenal" shall mean the Rocky Mountain Arsenal, a federal facility located in Adams County, Colorado, as described more specifically in Paragraph 8 of Colorado's July 1990 Amended Complaint in this action and the United States' Answer thereto.

(b)     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

(c)     "Colorado" or the "State" shall mean the State of Colorado and its agencies, subdivisions, departments, instrumentalities and trustees for Natural Resources.

(d)     "Consent Decree" shall mean this Consent Decree.

(e)     "Damages" shall mean damages for injuries to or loss of Natural Resources recoverable by the State of Colorado.  This term does not include damages for injuries to or loss of Natural Resources recoverable by the United States on behalf of federal trustees for natural resources within the meaning of section 107(f)(2)(A) of CERCLA, 42 U.S.C. § 9607(f)(2).

(f)     "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

(g)     "Litigation" shall mean the lawsuit initiated by the State in the United States District Court for the District of Colorado by the filing of a complaint on December 9, 1983, designated as Civil Action Number 83-C-2386, as amended.

(h)     "Natural Resources" shall mean land, fish, wildlife, biota, air, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State of Colorado at the Arsenal;

–6–

(i)     "Parties" shall mean the State and the United States.

(j)     "Response" shall have the meaning set forth in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

(k)     "Shell" shall mean the Shell Oil Company.

(l)     "Trustees" shall mean the Executive Director of the Colorado Department of Public Health and Environment; the Director of the Division of Reclamation, Mining and Safety of the Colorado Department of Natural Resources; and the Attorney General of the State of Colorado. As used in this Consent Decree, this term shall not include federal trustees for natural resources within the meaning of section 107(f)(2)(A) of CERCLA, 42 U.S.C. § 9607(f)(2).

(m)     "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## NATURAL RESOURCE DAMAGES SETTLEMENT AMOUNT

4.     (a)     As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States shall pay the sum of $7,400,000 to the Trustees, on behalf of the State, for use only to restore, replace or acquire the equivalent of the Natural Resources injured by releases of hazardous substances at or from the Arsenal. The $7,400,000 shall be paid to the Natural Resource Damage Recovery Fund (the "NRD Recovery Fund"), established pursuant to Colo. Rev. Stat. § 25-16-104.7.

(b)     Payment by the United States is subject to the availability of funds appropriated for such purpose. No provision of this Consent Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42 and 1511-19, or any other provision of law.

–7–

(c)      Upon the Effective Date of this Consent Decree, the United States shall be deemed to have waived its right to a $6,300,000 credit for Natural Resource Damages previously extended by the State to the Department of the Army pursuant to Paragraph 23 of a 1987 Agreement entitled "Superfund State/Political Subdivision Agreement Among the United States Environmental Protection Agency, the United States Department of the Army, the State of Colorado, and the South Adams County Water and Sanitation District," as well a March 20, 1992 letter from Casey Shpall, First Assistant Attorney General, to Lieutenant Colonel Jeffrey S. Guilford of the Army, supplementing the original 1987 credit by an additional $289,038.

(d)      If payment pursuant to paragraph 4(a) is not made in full within 120 days after the Effective Date of this Consent Decree, then interest on the unpaid balance shall be paid, and shall begin to accrue commencing on the 121st day after the Effective Date and continuing to accrue through the date of payment.  Interest shall accrue at the same rate as is specified for interest on investments of the Hazardous Substances Superfund established under subchapter A of Chapter 98 of Title 26 of the U.S. Code.

(e)      Payment to Colorado pursuant to paragraph 4(a) and 4(d) shall be in the form of an electronic fund transfer to the Colorado Department of Health and Environment's account at :

JP Morgan Chase       1125 Seventeenth Street       Denver, CO  80202
State of Colorado Operating Acct # 1193489208       ABA Bank No. 102001017

## RESPONSE COSTS

5.      By a Settlement Agreement the Parties entered in July 1997, the Parties and Shell settled

the State's claim for Response costs for all costs incurred by the State through June 30, 1996.

Paragraph 2 of the July 1997 Settlement Agreement set forth a process the Parties and Shell

agreed to follow for ongoing Response costs incurred by the State.  Since the July 1997

Settlement Agreement, the Parties and Shell have settled all other Response costs the State has

incurred through June 30, 2006, pursuant to a series of annual agreements variously titled

Settlement Agreements, Response Cost Agreements or Response Cost Payment

Acknowledgments.  In 1999, the Parties entered into a new agreement specifying procedures for

consideration of future State claims for Response Costs.  The claim by the State for Response

costs from July 1, 2006 through June 30, 2007 is currently pending.

6.      For annual periods beginning July 1, 2006, and continuing into the future, the Parties

shall continue to follow the same practice they have been following under the 1999 Agreement

for presentation, consideration and payment of Response costs incurred by the State.

## ATTORNEYS' FEES

7.      The Parties shall bear their own attorneys' fees, expert and consultant fees and all other

costs related to the assessment of natural resource damages; restoration or replacement of natural

resources or the acquisition of equivalent of those natural resources; the Litigation; or to the

implementation of this Consent Decree.

## RELEASE AND COVENANT NOT TO SUE

8.      Subject only to the reservations contained in paragraphs 9 and 10, the State releases, and

covenants not to sue or take administrative action against, the United States (including the

–9–

Department of the Army and any other agency or instrumentality of the United States), or any past or present official, officer, director, employee, agent or contractor (or any past or present official, officer, director, employee, agent or subcontractor of such contractor) from any claim or liability under CERCLA or any other federal or state statutory or common law (including without limitation claims based on the public trust doctrine) for: (i) Damages for injury to, destruction of, or loss of Natural Resources, or the cost of assessing any injury to, any Natural Resource resulting in whole or in part from any release or threatened release of any hazardous substance, pollutant or contaminant at or from the Arsenal, irrespective of when such injury or release allegedly occurred or whether such injury or release is presently known or unknown; and (ii) costs of Response actions, provided that this release and covenant not to sue with respect to Response actions shall not take effect for the State's annual claim for costs of Response actions incurred after June 30, 2006, until such time as the Parties have resolved each such annual claim as provided in paragraphs 5 and 6 above.

9. The releases and covenants not to sue do not include any claim for either Party's failure to comply with the terms of the Consent Decree. Before making any claim for any failure to comply with the Consent Decree, the claiming Party shall first provide written notice to the other Party specifying the failure and the factual basis, and allow the other Party 30 Days to cure any such failure. Neither Party shall make any claim for failure to comply with the Consent Decree if the other Party cures the alleged failure in such time.

10. The releases and covenants not to sue exclude any claim against the United States for Damages for injury to, destruction of, or loss of Natural Resources or costs of Response actions that occur as a result of any future release for which the United States is liable, provided that

such future release or injury is unrelated to (a) any existing or prior releases; (b) any Response

action related to such prior or existing releases; and (c) any injury to Natural Resources or cost of

Response that is not caused by a release but results from any Response action that may be

required in the future to repair, restore, supplement or replace an existing Response action or

structure.  For purposes of this paragraph, and by way of illustration only, a future release or

injury to Natural Resources for which the United States may remain liable shall not include (i)

the migration of existing contamination; (ii) the continued or future exposure of any Natural

Resource to existing or prior contamination or any condition resulting therefrom; (iii) any release

or injury resulting from any hazardous substance, pollutant or contaminant that remains at the

Arsenal site, including those contained in any engineered structure or treated by any engineered

system that forms part of any Arsenal Response action; and (iv) the detection of new or

previously unknown levels of contamination from past Arsenal operations.

## EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

11.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any

cause of action to, any person not a party to this Consent Decree.  Each of the Parties expressly

reserves any and all rights, defenses, claims, demands, and causes of action which each Party

may have with respect to any matter, transaction, or occurrence relating in any way to the Site

against any person not a Party hereto.

12.     The Parties agree and the Court orders that the United States is entitled, as of the date this

Consent Decree is entered as an order and final judgment of the Court, to protection from

contribution actions or claims for the matters addressed in this Consent Decree, as provided by

Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).  The matters addressed in this Consent

Decree include (i) Damages for injury to, destruction of, or loss of Natural Resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the release of any hazardous substance, pollutant or contaminant at or from the Arsenal and (ii) the State's costs of Response actions, provided that the protection from contribution claims for such Response action costs shall not take effect for periods following June 30, 2006, until such time as the United States and the State have settled each such claim on an annual basis.

13.    Except as provided in Paragraphs 5, 6, and 8 herein, and in accordance with the procedures outlined in Paragraph 21, upon the entry of this Consent Decree, all of Colorado's claims against the United States in the Litigation shall be dismissed with prejudice.

**NOTICES AND SUBMISSIONS**

14.    Written notices related to this Consent Decree shall be considered made when personally delivered, faxed, or sent by delivery service to the following, as may amended by either Party from time to time by notice to the other Party:

For the United States:

Jon M. Lipshultz
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C.  20026-3986

Joe Warren
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044-7611

with copies to:

> Mark A. Holycross
> Lieutenant Colonel, U.S. Army
> Chief, Environmental Litigation Branch
> Environmental Law Division
> U.S. Army Legal Services Agency
> 901 N. Stuart St., Suite 402
> Arlington, VA 22203

For the State:

> Daniel S. Miller
> Senior Assistant Attorney General
> Natural Resources and Environment Section
> Colorado Department of Law
> 1525 Sherman Street, 7th Floor
> Denver, CO 80203

with copies to:

> Casey A. Shpall
> Deputy Attorney General
> Natural Resources and Environment Section
> Colorado Department of Law
> 1525 Sherman Street, 7th Floor
> Denver, CO 80203

## DISPUTE RESOLUTION

15.     In the event of any dispute regarding the Consent Decree arising after its final approval by the Court, the Parties shall attempt to resolve such dispute through negotiation, mediation, non-binding arbitration or any other form of alternative dispute resolution as may be agreed to by the Parties at the time the dispute arises.

16.     In the event that the Parties fail to resolve a dispute pursuant to the preceding paragraph within a reasonable time, either Party may seek to enforce such rights and remedies as

may be available to such Party, including but not limited to petitioning the Court to interpret or enforce any term of this Consent Decree.

17.     Except to the extent provided in paragraphs 15 and 16, nothing in this Consent Decree shall be construed to limit the right of a Party to initiate an action against the other Party for breach of this Consent Decree or to otherwise limit any right which any Party has or may have against any other person or entity.

## RETENTION OF JURISDICTION AND TERMINATION

18.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate to construe, modify, implement, terminate, reinstate or enforce compliance with the terms of this Consent Decree or for any further relief as the interest of justice may require.

19.     Except with regard to the releases and covenants not to sue set forth in Paragraphs 8-10, and except as may otherwise be provided by the Court pursuant to Paragraphs 18 and 21, this Consent Decree shall terminate upon receipt by Colorado of the payment required by Paragraphs 4(a), 4(d), and 4(e).

## INTEGRATION

20.     This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the State and the United States with respect to the Natural Resource Damage settlement of the claim for natural resource damages embodied herein. The Parties acknowledge that there are no representations, agreements or understandings between the State

and the United States relating to the settlement between them other than those expressly

contained in this Consent Decree.

### LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

21.     Within 10 Days of execution of this Consent Decree, the State and the United States shall

jointly lodge the Consent Decree with the Court having jurisdiction over the Litigation for a

public notice and comment period of 30 Days.  Within a reasonable time not to exceed 30 Days

after the close of the public comment period, if the Parties conclude to proceed with this

settlement according to the terms of this Consent Decree, they shall file a joint motion requesting

the Court to enter the Consent Decree as an order and final judgment and to dismiss with

prejudice all of the State's claims against the United States, except as provided in paragraphs 5, 6

and 8, each Party to pay its own costs and attorneys' fees.

### INADMISSIBILITY AND PRIVILEGE

22.     Other than in a proceeding to enforce the terms of this Consent Decree, nothing in this

Consent Decree shall be admissible as evidence to prove liability for or invalidity of any claim or

defense in the Litigation or the amount of any such claim.  None of the Parties is making any

admission of fact or law by entering into this Consent Decree.

23.     Nothing in this Consent Decree, nor any actions taken in accordance with this Consent

Decree, shall be construed as a waiver of the attorney-client privilege, work-product immunity or

any other privilege or immunity that has been or may be asserted in this or any other matter.

### MODIFICATION

24.     Except for jurisdictional provisions of paragraph 1, the settlement amounts and other

consideration set forth in paragraphs 4 through 6, the covenants not to sue provisions of

paragraphs 8 through 10, the contribution protection in paragraph 12, and the retention of jurisdiction provided by paragraph 18, the Parties can modify the terms of the Consent Decree by mutual agreement without Court order or approval, in order to achieve the purposes of the Consent Decree.

## EFFECTIVE DATE

25.     The effective date of this Consent Decree shall be the date upon which it is entered by the Court as an order and final judgment.

## SIGNATURES AND COUNTERPARTS

26.     Each undersigned representative of a signatory to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such signatory to this document. This Consent Decree may be executed in multiple counterparts, each one of which shall be deemed an original, but all of which constitute one and the same Consent Decree. Scanned images of signed signature pages are acceptable evidence of execution.

–16–

FOR THE STATE:

_John W. Suthers_                    November 20, 2008
John W. Suthers, Attorney General, State of Colorado
Date:

_James B. Martin_                    Nov. 18, 2008
James B. Martin, Executive Director, Colorado Department of Public Health and Environment
Date:

_Ronalda Cattany_                    November 18, 2008
Ronald W. Cattany, Director, Division of Reclamation, Mining and Safety
Date:


FOR THE UNITED STATES:


_____
John C. Cruden, Deputy Assistant Attorney General, U.S. Department of Justice, Environment
and Natural Resources Division
Date:


_____
Jon M. Lipshultz, Attorney, U.S. Department of Justice, Environment and Natural Resources
Division, Environmental Defense Section
Date:



SO ORDERED THIS _____ DAY OF _____, 200___

_____
United States District Judge

−17−

FOR THE STATE:

_____

John W. Suthers, Attorney General, State of Colorado
Date:

_____

James B. Martin, Executive Director, Colorado Department of Public Health and Environment
Date:

_____

Ronald W. Cattany, Director, Division of Reclamation, Mining and Safety
Date:

FOR THE UNITED STATES:

_____

John C. Cruden, Deputy Assistant Attorney General, U.S. Department of Justice, Environment
and Natural Resources Division
Date: 11/19/08

_____

Jon M. Lipshultz, Attorney, U.S. Department of Justice, Environment and Natural Resources
Division, Environmental Defense Section
Date: 11/21/08

SO ORDERED THIS 27 DAY OF Feb. , 200 9

_____

United States District Judge

–17–