IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 83-cv-02386-PAB

STATE OF COLORADO,

   Plaintiff,

v.

UNITED STATES OF AMERICA, and
SHELL OIL COMPANY, et al ,

   Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Joint Motion to Reopen for Purposes of Amending 2008 Consent Decree Between Shell Oil Company and State of Colorado [Docket No. 104] filed by plaintiff the State of Colorado ("the State") and defendant Shell Oil Company ("Shell"), and plaintiff's Unopposed Motion to Enter Amendment to 2008 Consent Decree Between Shell Oil Company and State of Colorado [Docket No. 109], which seeks to modify a consent decree that Chief Judge Wiley Y. Daniel entered in this case in 2008.  *Id.* at 1.

**I. BACKGROUND**

On December 9, 1983, the State filed a complaint in this action under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607-9675.  Docket No. 98 at 2, ¶ A.  The complaint was amended twice.  *Id.*, ¶ B.  The second amended complaint brought claims against

Shell and the United States under CERCLA, the Resource Conservation and Recovery Act, and the Colorado Hazardous Waste Management Act. *Id*.

On September 22, 2008, Chief Judge Daniel entered a consent decree (the "2008 Consent Decree") in this case. Docket No. 89. The 2008 Consent Decree bound Shell and the State. *Id*. at 5, ¶ 2. On February 27, 2009, Chief Judge Daniel entered another consent decree (the "2009 Consent Decree"). Docket No. 98. The 2009 Consent Decree binds the United States and the State of Colorado. *Id.* at 5, ¶ 2. Both the 2008 and 2009 Consent Decrees address damage caused to Colorado's natural resources caused by the release of hazardous substances by the United States Army and Shell from the Rocky Mountain Arsenal (the "Arsenal"), a federally owned facility in Adams County, Colorado. Docket No. 89 at 2, 3, ¶¶ C., F.; Docket No. 98 at 2, 3, ¶¶ C., F.

The 2008 Consent Decree required that Shell pay $10 million into the Natural Damage Recovery Fund (the "Recovery Fund") in order to "restore, replace or acquire the equivalent of the Natural Resources injured by releases of hazardous substances at or from the Arsenal". Docket No. 89 at 7, ¶ 4. Shell was also required to make a donation of property to Commerce City, Colorado in support of the Northeast Greenway Project ("Greenway Project") and to donate an additional $10 million to the Colorado National Resources Foundation Fund (the "Foundation Fund"). *Id*. at 8-9, ¶¶ 5-6. The Greenway Project is a "plan for creation of a network of urban greenways, trails and open spaces near the Arsenal extending from Denver to Brighton and from Commerce City to Aurora." *Id.* at 6, ¶ (3)(h). Shell's donation to the Foundation Fund was "to be used solely for the Greenway Project." *Id.* at 9, ¶ 6. Shell was required to create

2

governing documents for a Northeast Greenway Corridor Advisory Committee (the "NGC"). *Id.* at 10, ¶ 6(e). The NGC was tasked with reviewing awards for the Greenway Project. *Id*.

The 2008 Consent Decree stated that the "Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate to construe, modify, implement, terminate, reinstate or enforce compliance with the terms of this Consent Decree or for any further relief as the interest of justice may require." *Id.* at 16, ¶ 21.

Shell has transferred the funds and property required by the 2008 Consent Decree. Docket No. 109-1 at 1, ¶ 1. From Shell's donations, approximately $1 million remains in the Foundation Fund and $7 million remains in the Recovery Fund. *Id.* at 2, ¶ 4. The remaining funds in the Foundation Fund may only be spent by NGC under the 2008 Consent Decree. *Id.* at 1-2, ¶ 2. The NGC, however, no longer exists. *Id.* at 2, ¶ 5.

The State would like to "issue a Solicitation for Project Proposals to seek new projects to expend the remaining funds in both the Recovery Fund and the Foundation Fund for projects that restore, replace or acquire the equivalent of the injured resources without the constraint that the remaining funds in the Foundation Fund be used only for projects selected by the NGC." *Id.*, ¶ 6. To accomplish this goal, the State requests that the Court amend the 2008 Consent Decree. Docket No. 109 at 2.

The State asks that the Court amend the 2008 Consent Decree to state:

> The Parties agree the 2008 Consent Decree is hereby amended to nullify future application of the provision in Paragraph 6 that requires Foundation Fund monies be used solely for the Greenway Project and any provisions associated therewith which may effectuate, or require, or be construed to require any future compliance with said provision in Paragraph 6. This does not affect the use of the money in the Recovery Fund, which remains subject to the 2008 Consent Decree and the separate Consent Decree with the United States.

Docket No. 109-1 at 2, ¶ 7. Shell supports this course of action. *Id.*, ¶ 6.

The State circulated a draft version of its proposed amendment to the seven constituents of the former Northeast Greenway corridor workgroup. Docket No. 104 at 3. Five constituents responded to the proposed amendment, and each stated it supported the State's proposed amendment. *Id.* The State opened a 30-day public comment period for its proposed amendment. Docket No. 109 at 1-2. The comment period ended on May 12, 2022. *Id.* at 2. The State did not receive any public comments. *Id.*

## II. LEGAL STANDARDS

### A. Jurisdiction

Generally, a court does not retain jurisdiction to enforce settlements in closed cases. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377-78 (1994). However, a court may retain jurisdiction in a case to enforce consent decrees and, "in addition, a district court can retain jurisdiction over a settlement agreement 'if the order of dismissal shows an intent to retain jurisdiction.'" *Floyd v. Ortiz*, 300 F.3d 1223, 1226 & n.3 (10th Cir. 2002) (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994) (citing *Kokkonen*, 511 U.S. at 381)).

### B.  Modification

A court is generally not entitled to alter the terms of a consent decree stipulated to by the parties.  *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). Rather, the court "is faced with the option of either approving or denying the decree" as a whole.  *Id*.  "[M]odifications of a consent decree should only be made to further the original goals of the agreement."  *Id.* at 510.

A consent decree may be modified under Federal Rule of Civil Procedure 60(b)(5) upon a showing that applying it prospectively is no longer equitable or because the judgment has been satisfied.  *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1201 (10th Cir. 2018).  In *Jackson*, the Tenth Circuit summarized the propriety of courts modifying consent decrees and outlined the proper considerations for modification pursuant to Rule 60(b)(5).  *Id.* at 1191-1204.  The court observed that:

> a motion for relief from a consent decree based on an assertion that applying it prospectively is no longer equitable demands a different focus than a motion based on an assertion that the judgment has been satisfied, released or discharged.  With respect to the latter ground for relief, it is appropriate for a court to focus on whether the movant has satisfied each obligation set forth in the consent decree.  But where . . . the movant contends that changed circumstances have rendered further enforcement of the consent decree no longer equitable, the inquiry is whether the movant has shown (a) that a significant change in factual circumstances or in law warrants revision of the decree, and (b) that the requested modification is suitably tailored to the changed circumstance. A movant may establish that changed factual circumstances warrant modification when (i) the changed circumstances make compliance with the decree substantially more onerous, (ii) a decree proves to be unworkable because of unforeseen obstacles, or (iii) enforcement of the decree without modification would be detrimental to the public interest.

*Id.* at 1201 (citations and quotations omitted).  "It is an abuse of discretion for a district court to deny a motion for modification where the moving party meets this burden."  *Id.*

## III.  ANALYSIS

The parties argue that the Court has jurisdiction over the 2008 Consent Decree because the Court retained jurisdiction in the 2008 order.  Docket No. 104 at 2.  The Court agrees that the 2008 Consent Decree allows the Court to exercise jurisdiction over the enforcement and modification of the 2008 Consent Decree.

### A.  Motion to Reopen

The joint motion to reopen requests that this case be reopened for the limited purpose of amending the 2008 Consent Decree between the State and Shell.  *Id.* at 4.  Although the case was administratively closed in February 1995, Docket No. 72, it was re-opened in July 2008.  Docket Nos. 83, 86.  Thereafter, it was not administratively closed.  Final judgment was entered on plaintiff's claims against Shell on September 22, 2008.  Docket No. 89 at 13, ¶ 16.  Plaintiff's claims against the United States were dismissed with prejudice on March 2, 2009.  Docket No. 97 at 1.  Crossclaims between Shell and the United States were dismissed with prejudice on March 18, 2009.  Docket No. 100.

As a result, the Court will deny the motion to re-open as moot.

### B.  Motion to Modify

The State seeks to modify the Court's 2008 Consent Decree.  Docket No. 109 at 1.  The State indicates that Shell and the United States do not oppose plaintiff's motion.  *Id.* at 1.  Additionally, the State says that it has provided public notice of the proposed amendment via publication in the Denver Post Legal Notices section and the Colorado Natural Resources Trustees' webpage.  *Id.* at 1-2.

The State does not identify upon what legal grounds it seeks to modify the 2008 Consent Decree. *Id.* at 1-3. For example, the motion to modify does not state that applying the 2008 Consent Decree "prospectively is no longer equitable" or that "the judgment has been satisfied, released or discharged." *See Jackson*, 880 F.3d at 1201. Considering plaintiff's statement that the NGC no longer exists and that the remaining funds in the Foundation Fund cannot be spent without approval from the NGC, Docket No. 109-1 at 1, 2, ¶¶ 2, 5, the Court assumes that the State moves to modify the 2008 Consent Decree pursuant to Rule 60(b)(5) because prospective application of the 2008 Consent Decree is no longer equitable. *See Jackson*, 880 F.3d at 1201.

First, the Court considers whether "a significant change either in factual conditions or in law warrants revision of the decree." *Jackson*, 880 F.3d at 1194 (quotations and citation omitted). Because the 2008 Consent Decree requires that the $10 million that shall be donated to the Foundation Fund be used on projects selected by the NGC, Docket No. 89 at 10, ¶ 6(e), and NGC no longer exists, Docket No. 109-1 at 2, ¶ 5, the Court finds that the 2008 Consent "[D]ecree proves to be unworkable because of [an] unforeseen obstacle[ ]." *Jackson*, 880 F.3d at 1194 (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). The Court finds plaintiff has met its burden to demonstrate a factual change that warrants modification of the 2008 Consent Decree.

Next, the Court must determine "whether the proposed modification is suitably tailored to the changed circumstance." *Id.* (quoting *Rufo*, 502 U.S. at 391). The State seeks to amend that part of Paragraph 6 of the 2008 Consent Decree requiring that Foundation Fund monies be used solely for the Greenway Project. Docket No. 109-1 at

7

2, ¶ 7.  The State indicates that it "wishes to issue a Solicitation for Project Proposals to seek new projects to expend the remaining funds in both the Recovery Fund and the Foundation Fund for projects that restore, replace or acquire the equivalent of the injured resources without the constraint that the remaining funds in the Foundation Fund be used only for projects selected by the NGC."  *Id*., ¶ 6.

The 2008 Consent Decree aimed to "restore, replace or acquire the equivalent of the Natural Resources injured by releases of hazardous substances at or from the Arsenal."  Docket No. 89 at 7, ¶ 4.  However, the proposed amendment simply removes that requirement that monies in the Foundation Fund be used for the Greenway Project.  The effect of the amendment is, among other things, to no longer involve the NGC in the selection of projects.  The effect of the amendment is also to remove the criteria for how the remaining Foundation Fund money is spent.  While the State "wishes" to issue a solicitation to identify new projects to restore or replace the injured resources, there is no requirement for the State to do so or to use the money toward that goal.  The aspirational language in Paragraph 6 of the proposed amendment is not part of the amendment to the 2008 Consent Decree.  Therefore, the Court is unable to conclude that the amendment has the purpose or effect to "retain those benefits secured under the consent decree that are not impugned by the change in circumstances."  *Jackson*, 880 F.3d at 1195.  Accordingly, the proposed amendment is not well tailored to meet the original goals of the 2008 Consent Decree.

The State represents that a majority of the constituents of the NGC approve of the proposed amendment.  Docket No. 104 at 3.  Although federal consent decrees are aimed at remedying violations of federal law, "the public interest and principles of

federalism require a federal court to defer to state or local government officials,'" *Jackson*, 880 F.3d at 1194 (citing *Rufo*, 502 U.S. at 392), and requires that "state officials with front-line responsibility for administering a state program be given latitude and substantial discretion." *Id.* at 1192 (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004) (brackets omitted)). The Court gives considerable weight to the opinion of the State and the majority of the constituents of NGC on whether the proposed amendment is suited to the changed circumstances. The Court, however, also takes into account the effect of the proposed amendment to eliminate the NGC's role in screening suitable Greenway Project awards without adopting other criteria for the expenditure of monies in the Foundation Fund.

Because the Court cannot find, under the currently proposed amendment, that the factors identified in *Jackson* weigh in favor of approving the amendment, the Court will deny the State's motion to modify the 2008 Consent Decree without prejudice to the State proposing a modified amendment addressing the Court's concerns.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Joint Motion to Reopen for Purpose of Amending 2008 Consent Decree Between Shell Oil Company and State of Colorado [Docket No. 104] is **DENIED as moot**. It is further

**ORDERED** that plaintiff's Unopposed Motion to Enter Amendment to 2008 Consent Decree Between Shell Oil Company and State of Colorado [Docket No. 109] is **DENIED without prejudice**.

DATED March 13, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge