IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 83-cv-02386-PAB

STATE OF COLORADO,

    Plaintiff,

v.

UNITED STATES OF AMERICA, and
SHELL OIL COMPANY, et al.,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Second Unopposed Motion to Enter Amendment to 2008 Consent Decree Between Shell Oil Company and State of Colorado [Docket No. 115], filed by plaintiff the State of Colorado ("the State"), which seeks to modify a consent decree the Court entered in this case in 2008. *Id.* at 1.

**I. BACKGROUND**

On December 9, 1983, the State filed a complaint in this action under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607–9675. Docket No. 98 at 2, ¶ A. The complaint was amended twice. *Id.*, ¶ B. The second amended complaint brought claims against defendant Shell Oil Company ("Shell") and the United States under CERCLA, as well as claims for violations of the federal Resource Conservation and Recovery Act and the Colorado Hazardous Waste Management Act. *Id.*, ¶ B.

On September 22, 2008, Chief Judge Wiley J. Daniel entered a consent decree (the "2008 Consent Decree") in this case. Docket No. 89. The 2008 Consent Decree

bound Shell and the State.  *Id.* at 5, ¶ 2.  On February 27, 2009, Chief Judge Daniel entered another consent decree (the "2009 Consent Decree") in this case.  Docket No. 98.  The 2009 Consent Decree binds the United States and the State of Colorado.  *Id.* at 5, ¶ 2.  Both the 2008 and 2009 Consent Decrees address damage caused to the State's natural resources caused by the release of hazardous substances by the United States Army and Shell from the Rocky Mountain Arsenal (the "Arsenal"), a federally owned facility in Adams County, Colorado.  Docket No. 89 at 2, 3, ¶¶ C, F; Docket No. 98 at 2, 3, ¶¶ C, F.

The 2008 Consent Decree required that Shell pay $10 million to the Executive Director of the Colorado Department of Public Health and Environment; the Directors of Reclamation, Mining, and Safety of the Colorado Department of Natural Resources; and the Attorney General of the State of Colorado to "restore, replace or acquire the equivalent of the Natural Resources injured by releases of hazardous substances at or from the Arsenal" into the Natural Damage Recovery Fund (the "Recovery Fund").  Docket No. 89 at 7, ¶ 4.  Shell was also required to make a donation of property to Commerce City in support of the greenway project and to donate $10 million to the Colorado National Resources Foundation Fund (the "Foundation Fund").  *Id.* at 9, ¶ 6.  The Greenway project is a "plan for creation of a network of urban greenways, trails and open spaces near the Arsenal extending from Denver to Brighton and from Commerce City to Aurora."  *Id.* at 6, ¶ (3)(h).  Shell's donation to the Foundation Fund was "to be used solely for the Greenway Project."  *Id.* at 9, ¶ 6.  Shell was required to create governing documents for a Northeast Greenway Corridor Advisory Committee (the

"NGC"). *Id.* at 10, ¶ 6(e).  The NGC was tasked with reviewing awards for the Greenway Project.  *Id.*

The 2008 Consent Decree stated that the "Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate to construe, modify, implement, terminate, reinstate or enforce compliance with the terms of this Consent Decree or for any further relief as the interest of justice may require."  *Id.* at 16, ¶ 21.

Shell has transferred the funds and property required by the 2008 Consent Decree.  Docket No. 115-1 at 1, ¶ 1.  From Shell's donations, approximately $1 million remains in the Foundation Fund and $7 million remains in the Recovery Fund.  *Id.* at 2, ¶ 4.  The remaining funds in the Foundation Fund may only be spent by NGC under the 2008 Consent Decree.  *Id.* at 1-2, ¶ 2.  The NGC no longer exists.  *Id.* at 2, ¶ 5.

The State would like to "issue a Solicitation for Project Proposals to seek new projects to expend the remaining funds in both the Recovery Fund and the Foundation Fund for projects that restore, replace or acquire the equivalent of the injured resources without the constraint that the remaining funds in the Foundation Fund be used only for projects selected by the NGC."  *Id.*, ¶ 6.  To accomplish this goal, the State requests that the Court amend the 2008 Consent Decree.  Docket No. 115 at 2.

This is the State's second such request.  On May 20, 2022, the State filed its first Unopposed Motion to Enter Amendment to 2008 Consent Decree Between Shell Oil Company and State of Colorado.  *See* Docket No. 109.  The Court denied without

prejudice the State's motion on March 13, 2023.  Docket No. 113 at 10.  As part of its analysis, the Court assumed that the State was seeking to have the 2008 Consent Decree amended under Federal Rule of Civil Procedure 60(b)(5) because the dissolution of the NGC made the prospective application of the 2008 Consent Decree no longer equitable.  *Id.* at 7 (citing *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1201 (10th Cir. 2018)).  The Court determined that the State had met its burden to demonstrate a factual change that warranted modification of the 2008 Consent Decree.  *Id.*  The 2008 Consent Decree sought to "restore, replace or acquire the equivalent of the Natural Resources injured by releases of hazardous substances at or from the Arsenal."  Docket No. 89 at 7, ¶ 4.  While the proposed amendment contained aspirational language about what the state "wishe[d]" to do with the remaining funds, it sought to remove the language that required the Foundation Fund to be spent on restoring, replacing, or acquiring natural resources.   Docket No. 113 at 8.  The Court found that the proposed amendment was not well-tailored to meet the original goals of the 2008 Consent Decree.  *Id.*  On these grounds, the Court denied the State's motion to amend without prejudice.  *Id.* at 10.

On April 25, 2023, notice for the proposed revised Amendment was published in the Denver Post Legal Notices section and on the Colorado Natural Resources Trustees' webpage.  Docket No. 115 at 2.  After the 30-day comment period ended on May 31, 2023, the State had received no public comments.  *Id.*  The State then filed the instant motion in this case on June 14, 2023.  *See generally id.*

## II. LEGAL STANDARDS

### A. Jurisdiction

Generally, a court does not retain jurisdiction to enforce settlements in closed cases. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377–78 (1994). A court may, however, retain jurisdiction in a case to enforce consent decrees and "in addition, a district court can retain jurisdiction over a settlement agreement 'if the order of dismissal shows an intent to retain jurisdiction.'" *Floyd v. Ortiz*, 300 F.3d 1223, 1226 & n.3 (10th Cir. 2002) (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994) (citing *Kokkonen*, 511 U.S. at 381)).

### B. Modification

A court is generally not entitled to alter the terms of a consent decree stipulated to by the parties; the court "is faced with the option of either approving or denying the decree" as a whole. *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). A court, "however, is not obliged to approve every proposed consent decree placed before it." *Id.* "[M]odifications of a consent decree should only be made to further the original goals of the agreement." *Id.* at 510.

A consent decree may be modified under Federal Rule of Civil Procedure 60(b)(5) because applying it prospectively is no longer equitable or because the judgment has been satisfied. *Jackson*, 880 F.3d at 1201. In *Jackson*, the Tenth Circuit summarized the state of the law on modification to consent decrees based on *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), and *Horne v. Flores*, 557 U.S. 433 (2009), and outlined the proper considerations for modification pursuant to Rule 60(b)(5). *Id.* at 1191-1204. The court observed that:

5

> A motion for relief from a consent decree based on an assertion that applying it prospectively is no longer equitable demands a different focus than a motion based on an assertion that the judgment has been satisfied, released or discharged. With respect to the latter ground for relief, it is appropriate for a court to focus on whether the movant has satisfied each obligation set forth in the consent decree. But where . . . the movant contends that changed circumstances have rendered further enforcement of the consent decree no longer equitable, the inquiry is whether the movant has shown (a) that a significant change in factual circumstances or in law warrants revision of the decree, and (b) that the requested modification is suitably tailored to the changed circumstance. A movant may establish that changed factual circumstances warrant modification when (i) the changed circumstances make compliance with the decree substantially more onerous, (ii) a decree proves to be unworkable because of unforeseen obstacles, or (iii) enforcement of the decree without modification would be detrimental to the public interest.

*Id.* at 1201 (citations and quotations omitted). "It is an abuse of discretion for a district court to deny a motion for modification where the moving party meets this burden." *Id.*

### III.  ANALYSIS

The parties state that the Court has jurisdiction over the Consent Decree because the Court retained jurisdiction in the 2009 order. Docket No. 104 at 2. The Court agrees that the 2008 Consent Decree allows the Court to exercise jurisdiction over the enforcement and modification of the 2008 Consent Decree.

The State seeks to modify the Court's 2008 Consent Decree. Docket No. 115 at 1. The State does not indicate the legal grounds by which it seeks to modify the 2008 Consent Decree. *Id.* at 1–2. However, the Court will assume the State moves to modify the 2008 Consent Decree pursuant to Rule 60(b)(5) because prospective application of the Consent Decree is no longer equitable. Plaintiff states that Shell and the United States do not oppose plaintiff's motion. Docket No. 115 at 1. Additionally, plaintiff states that it has provided notice of the proposed amendment to the public via

publication in the Denver Post Legal Notices section and the Colorado Natural Trustees' webpage.  *Id.* at 2.

The Court has already determined that the dissolution of NGC, which was the entity tasked with spending Shell's donated funds, Docket No. 89 at 10, ¶ 6(e), constitutes "a significant change in factual circumstances or in law [that] warrants revision of the decree."  Docket No. 113 at 7 (citing *Jackson*, 880 F.3d at 1194).  The question is whether the newly proposed Amendment "is suitably tailored to the changed circumstance."  *Jackson*, 880 F.3d at 1194 (citing *Rufo*, 502 U.S. at 391).  The State's prior proposed amendment asked that the Court amend the 2008 Consent Decree to state:

> The Parties agree the 2008 Consent Decree is hereby amended to nullify future application of the provision in Paragraph 6 that requires Foundation Fund monies be used solely for the Greenway Project and any provisions associated therewith which may effectuate, or require, or be construed to require any future compliance with said provision in Paragraph 6.  This does not affect the use of the money in the Recovery Fund, which remains subject to the 2008 Consent Decree and the separate Consent Decree with the United States.

Docket No. 109-1 at 2, ¶ 7.  The newly proposed Amendment includes the language, "[t]he Parties further agree that Foundation Fund monies will be used to restore, replace or acquire the equivalent of the natural resources injured as required by the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(f)."  Docket No. 115-1 at 2-3, ¶ 7.

The State represents that the majority of the constituents of NGC approve of the proposed amendment.  Docket No. 104 at 3.  Although federal consent decrees are aimed at remedying violations of federal law, "[t]he public interest and principles of federalism require a federal court to defer to state or local government officials,"

7

*Jackson*, 880 F.3d at 1194 (citing *Rufo*, 502 U.S. at 392), and that "state officials with front-line responsibility for administering a state program be given latitude and substantial discretion." *Id.* at 1192 (quoting *Frew ex rel Frew v. Hawkins*, 540 U.S. 431, 442 (2004) (alteration omitted)).  The Court considers the opinion of the State and the constituents of NGC as highly persuasive on whether the proposed amendment is suited to the changed circumstances.

The addition of the constraint placed on how the State may use the Foundation Fund has alleviated the infirmities of the prior proposed Amendment.  The Court finds that, because the State demonstrates that the revised Amendment is tailored to the goals of the original 2008 Consent Decree and approved by the State of Colorado and the constituents of NGC, the State has demonstrated that its proposed modification is suitably tailored to the changed circumstances.  Therefore, the Court will grant the State's motion to modify the 2008 Consent Decree.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Second Unopposed Motion to Enter Amendment to 2008 Consent Decree Between Shell Oil Company and State of Colorado [Docket No. 115] is **GRANTED**.  It is further

**ORDERED** that the Court's Consent Decree entered on September 22, 2008, Docket No. 89, is amended to include the following provision:

> The Parties agree the 2008 Consent Decree is hereby amended to nullify future application of the provision in Paragraph 6 that requires Foundation Fund monies be used solely for the Greenway Project and any provisions associated therewith which may effectuate, or require, or be construed to require any future compliance with said provision in Paragraph 6.  The Parties further agree that Foundation Fund monies will be used to restore, replace or acquire the

equivalent of the natural resources injured as required by the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(f). This does not affect the use of the money in the Recovery Fund, which remains subject to the 2008 Consent Decree and the separate Consent Decree with the United States.

DATED March 8, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge